IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII MOTORSPORTS INVESTMENT, INC., a Hawaii corporation, and its limited partner, HAWAII MOTORSPORTS CENTER LIMITED PARTNERS, | ) ) ) ) ) | CIV. NO. 09-304 SOM/BMK ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CLAYTON GROUP SERVICES, formerly known as CLAYTON ENVIRONMENTAL CONSULTANTS, INC.,now known as BUREAU VERITAS NORTH AMERICA, INC., a Delaware corporation doing business in Hawaii; DOES 1-10, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND

I.      INTRODUCTION.

        This case involves disputes about whether a nonparty to

a contract was owed certain duties by a contracting party.

Plaintiffs Hawaii Motorsports Investment, Inc., and Hawaii

Motorsports Center Limited Partners (collectively, "HMC"),

complain about an environmental assessment prepared by Defendant

Clayton Group Services, Inc., formerly known as Clayton

Environmental Engineering and Clayton Environmental Consultants,

Inc., now known as Bureau Veritas North American, Inc. ("BV").

BV prepared the environmental assessment not for HMC, but for

Irongate Wilshire LLC ("Irongate"), which was interested in purchasing Hawaii Raceway Park from HMC.  HMC brings claims sounding in tort and in contract, and BV moves for dismissal of all claims.  This court dismisses the professional negligence, breach of contract, and negligent misrepresentation claims, and denies the motion with respect to the tortious interference claims.

II.   <u>FACTUAL BACKGROUND.</u>

HMC entered into a binding letter of intent for the sale of Hawaii Raceway Park in Kapolei, Hawaii, to Irongate for $20,300,000.00.  Compl. ¶ 8.  Irongate retained BV to perform an environmental assessment of the property.  BV issued its report on or about November 4, 2005.  <u>Id.</u> ¶ 14.

HMC alleges that the Phase I Environmental Site Assessment issued by BV was incomplete and erroneous.  <u>Id.</u> ¶ 15. HMC claims that, as a result of the inaccuracies in BV's report, Irongate refused to pay the agreed-upon sale price.  <u>Id.</u> ¶ 11. The parties ultimately agreed to a reduced price.  <u>Id.</u>  HMC alleges that its "negotiations for sale of the subject property were compromised and the value [of the property] diminished, causing a significant economic loss to HMC."  <u>Id.</u> ¶ 15.

On June 3, 2009, HMC filed a Complaint asserting four claims: 1) professional negligence; 2) breach of contract; 3) negligent misrepresentation; and 4) tortious interference with

2

business prospects.  On July 2, 2009, BV moved for dismissal
under Rule 12(b)(6) of the Federal Rules of Civil Procedure for
failure to state a claim upon which relief can be granted.

On September 16, 2009, the court asked the parties for
supplemental briefing regarding the court's subject matter
jurisdiction, as BV's citizenship was unclear.  The court was
also confused by the Complaint's description of the relationship
between Hawaii Motorsports Investment, Inc., and Hawaii
Motorsports Center Limited Partners.  In response, HMC "requested
the right to amend" the Complaint.  Having reviewed the
supplemental information, the court concludes that it has
diversity jurisdiction.

III.     LEGAL STANDARD.

    A.    Rule 12(b)(6).

Under Rule 12(b)(6), review is generally limited to the
contents of the complaint.  Sprewell v. Golden State Warriors,
266 F.3d 979, 988 (9th Cir. 2001).  If matters outside the
pleadings are considered, the Rule 12(b)(6) motion is treated as
one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc.,
110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d
932, 934 (9th Cir. 1996).  However, courts may "consider certain
materials--documents attached to the complaint, documents
incorporated by reference in the complaint, or matters of
judicial notice--without converting the motion to dismiss into a

motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

B.   <u>Rule (15)(a)</u>.

A party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  Fed. R. Civ. P. 15(a).  A motion to dismiss is not a responsive pleading.  Therefore, "[n]either the filing nor granting of such a motion before answer terminates the right to amend."  <u>Breier v. N, Cal. Bowling Proprietors' Ass'n</u>, 316 F.2d 787, 789 (9th Cir. 1963).

IV.    <u>ANALYSIS</u>.

A.   <u>HMC's Professional Negligence Claim is Dismissed.</u>

In its First Cause of Action, HMC claims that BV was professionally negligent in inaccurately assessing the property and preparing an incomplete environmental assessment report. Specifically, HMC says that BV's report described environmental concerns that had already been "alleviated" by the time BV made the report.  Compl. ¶ 14.  According to HMC, it relied on the report in selling the property at a reduced price.  <u>Id.</u> ¶¶ 15, 36.  HMC asserts that BV owed HMC a duty of care because of BV's status as a professional consultant.  HMC further asserts that BV beached its duty of care when not complying with professional standards, such as the American Society for Testing and Materials ("ASTM") Phase I professional standards, International Organization for Standardization ("IOS") standards, and applicable industry standards.  <u>Id.</u> ¶¶ 17-27.

5

HMC's professional negligence claim fails, as HMC has not established a relationship between HMC and BV giving rise to a duty on BV's part, and as HMC cannot pursue a claim based only on economic losses.

1. HMC Does Not Establish the Existence of a Relationship Between BV and HMC Giving Rise to a Duty Owed by BV to HMC.

A negligence claim requires a duty owed by the defendant to the plaintiff.  See Bidar v. Amfac, Inc., 66 Hawai`i 547, 551, 669 P.2d 154, 158 (1983) (noting that "it is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff").  The existence of a duty is entirely a question of law.  Id. at 552, 669 P.2d at 158.  In determining whether a duty is owed, the court "must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability."  Blair v. Ing, 95 Hawai`i 247, 260, 21 P.3d 452, 465 (2001).  The court found the following factors relevant in determining whether a duty existed:

> whether a special relationship exists . . . , the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the

> availability, cost, and prevalence of
> insurance for the risk involved.

Id. at 260, 21 P.3d at 465 (quoting Lee v. Corregedore, 83
Hawai`i 154, 164, 925 P.2d 324, 336 (1996)).

HMC alleges that BV owed HMC a duty based on BV's
status as a professional consultant.  Compl. ¶ 27.  Although a
professional may be liable to a claimant not a party to the
contract, that claimant must show the existence of a relationship
with the professional that gives rise to the existence of a duty
of care.  See Blair, 95 Hawai`i at 259, 21 P.3d at 464 (holding
that "where the relationship between an attorney and a non-client
is such that we would recognize a duty of care, the non-client
may proceed under either negligence or contract theories of
recovery").

HMC has not alleged a relationship between BV and HMC
that gives rise to a duty owed by BV to HMC.  HMC only alleges
that BV "prepared [the report] for Irongate's use in its
negotiations with HMC."  Compl. ¶ 14.  As discussed further in
connection with the breach of contract claim, HMC's allegations
at most go to whether HMC was an incidental beneficiary of the
contract between Irongate and BV.  If HMC is only an incidental
beneficiary, BV owed it no duty as a consultant.  See Blair, 95
Hawai`i at 261, 21 P.3d at 466 ("[A] benefit that is merely
incidentally conferred upon the beneficiary will not meet the
first factor [i.e., existence of a special relationship] or the

7

third party beneficiary principle that the contract be entered into with the intent to benefit the non-client."). Thus, to the extent HMC alleges professional negligence based on a duty arising from BV's professional status, the claim fails, as HMC has not articulated a special relationship between BV and HMC giving rise to a duty.

>    2.   To the Extent HMC Asserts a Negligence Claim Based on Violations of BV's Contractual Obligations Arising From the Contract Between BV and Irongate, The Claim is Barred by the Economic Loss Rule.

The economic loss rule, when it applies, precludes a plaintiff from recovering for purely economic losses in tort. City Exp., Inc., v. Express Partners, 87 Hawai`i 466, 469, 959 P.2d 836, 839 (1998). Broadly speaking, the economic loss rule is designed to maintain a distinction between damage remedies for breach of contract and for tort. Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc., 115 Hawai`i 232, 291, 167 P.3d 225, 284.

The Hawaii Supreme Court has discussed the economic loss rule in the context of construction defect cases:

>    The crux of [the economic loss rule] is the premise that economic interests are protected, if at all, by contract principles, rather than tort principles. Contract law is designed to enforce the expectancy interests created by agreement between the parties and seeks to enforce standards of quality. This standard of quality must be defined by reference to that which the parties have agreed upon. In contrast, tort law is designed to secure the protection of all

8

> citizens from the danger of physical harm to
> their persons or to their property and seeks
> to enforce standards of conduct.  These
> standards are imposed by society, without
> regard to any agreement.  Tort law has not
> traditionally protected strictly economic
> interests related to product quality--in
> other words, courts have generally refused to
> create a duty in tort to prevent such
> economic losses.

Venture 15, 115 Hawai`i at 291, 167 P.3d at 284 (quoting Calloway

v. City of Reno, 993 P.2d 1259 (Nev. 2000), overruled on other

grounds by Olson v. Richard, 89 P.3d 31 (Nev. 2004)).

The economic loss rule "becomes more complicated in

claims between a plaintiff and a defendant who have no

contractual relationship and hence no privity between them."

Venture 15, 115 Hawai`i at 287, 167 P.3d at 280 (quoting Plourde

Sand & Gravel Co. v. JGI E., Inc., 917 A.2d 1250, 1254 (N.H.

2007)).  Although some courts hold that the economic loss rule

does not apply when no contractual relationship exists between

the parties,

> Many courts . . . have expanded the economic
> loss [rule] to bar economic recovery in tort
> cases where there is no contract and[,]
> thus[,] no privity.  The policy behind this
> principle is to prevent potentially limitless
> liability for economic losses:  "While the
> physical consequences of negligence usually
> have been limited, the indirect economic
> repercussions of negligence may be far wider,
> indeed[,] virtually open-ended.

Venture 15, 115 Hawai`i at 287, 167 P.3d at 280 (internal

citations omitted).

The Hawaii Supreme Court in <u>Venture 15</u> discussed the scope of the economic loss rule when no contractual relation, or privity of contract, exists between a plaintiff and a defendant. In that case, the Association of Apartment Owners of Newton Meadows ("AOAO"), sued Liu Construction ("Liu"), among others, claiming negligence in the construction of a residential townhouse condominium.  This negligence claim followed the discovery of alleged shifts and cracks in the foundation of the condominium.  <u>Venture 15</u>, 115 Hawai`i at 238, 167 P.3d at 231. Liu had been hired by the general contractor as a masonry subcontractor to build concrete slabs for the building.  <u>Id.</u>  No contract, or privity of contract, existed between the AOAO and Liu.  The Hawaii Supreme Court viewed the AOAO as alleging that Liu had "negligently performed its duties *under its contract* with another party . . . and that[,] as a result, [the AOAO] lost the benefit of its bargain with [the vendor]."  <u>Id.</u> at 292, 167 P.3d at 285 (emphasis added).  The Hawaii Supreme Court declined to impose tort liability on Liu, holding, "[W]e agree with those jurisdictions that bar economic recovery in negligence where there was no privity of contract between the plaintiff and the defendant when allowing such recovery would blur the distinction between contract and tort law."  <u>Id.</u>  The court concluded that "the AOAO's negligence claims *based on violations of contract*

*specifications* are barred by the economic loss rule." Id. at 295, 167 P.3d at 288.

Venture 15 governs HMC's claim that BV negligently performed its contractual obligations with Irongate.  Like the AOAO in Venture 15, HMC lacks privity of contract with a party it is suing.  Like the AOAO in Venture 15, HMC is alleging that BV negligently performed its duties under its contract with another entity.  HMC alleges, "[BV] owed a duty to HMC . . . to perform *its contractual obligations* in accordance with ISO standards[.]" Compl. ¶ 26 (emphasis added).  HMC further alleges, "[BV] owed HMC such duties . . to accomplish the purpose for which [BV] *was contracted*[.]" Id. ¶ 26 (emphasis added).  HMC views BV as owing "a duty . . . to accomplish the purpose for which [BV] *was employed*." Id. ¶ 18 (emphasis added).  Finally, like the AOAO, HMC alleges it suffered only economic loss from BV's alleged breach of contract with Irongate.  Essentially, HMC alleges that it lost the benefit of its bargain with Irongate, and thus lost around seven million dollars.

To the extent HMC asserts a negligent tort claim based on BV's violations of contractual obligations owed to Irongate, the economic loss rule articulated in Venture 15 bars HMC's recovery.

11

B.   Because HMC Neither Alleges That It Had A Contract With BV Nor That HMC Was an Intended Beneficiary of the Contract Between BV and Irongate, HMC's Breach of Contract Claim is Dismissed.

In its Second Cause of Action, HMC alleges that "Defendant [BV] breached its contract to provide a clear and accurate evaluation of HMC's property."  Compl. ¶ 31.  HMC does not allege that it had a contract with BV.  If HMC is basing its breach of contract claim on the theory that it was an intended beneficiary of the contract between BV and Irongate, HMC must clearly allege that and include factual allegations in that regard.  Having failed to do that, HMC cannot defeat BV's motion to dismiss with respect to the breach of contract claim.

The Hawaii Supreme Court has discussed the concept of an intended beneficiary:

> (1) Unless otherwise agreed between promisor and promissee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> >
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

12

<u>Jou v. Nat'l Interstate Ins. Co. of Hawaii</u>, 114 Hawai`i 122, 130, 157 P.3d 561, 569 (2007) (internal quotation omitted).

"The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." <u>Blair</u>, 95 Hawai`i at 255, 21 P.3d at 460 (2001) (citation omitted). The "third party beneficiary approach focuses the existence of a duty entirely on whether the plaintiff was the person intended to be benefitted by the . . . services and does not extend to those incidentally deriving an indirect benefit." <u>Id.</u>; <u>see also Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship</u>, 115 Hawai`i 201, 214, 166 P.3d 961, 974 (2007) (noting that "a prime requisite to the status of third party beneficiary under a contract is that the parties to the contract must have intended to benefit the third party, who must be something more than a mere incidental beneficiary") (citations omitted).

HMC does not sufficiently allege that BV and Irongate intended to confer rights, or intended to benefit HMC under their contract. At most, HMC states, "Defendant BV knew or should have known that a definite, specific, valid business relationship, . . . existed between HMC and Irongate capable of acceptance with the reasonable probability of completion inuring to HMC's benefit." Compl. ¶ 44. That sentence, like similar sentences in the

13

Complaint, does not suggest that the parties intended to benefit HMC.  HMC only alleges that BV and Irongate were aware of the negotiations between Irongate and BV, not that the parties intended to benefit HMC.  HMC's allegations do not support the inference that BV, hired by Irongate to prepare a report for Irongate's use in its negotiations with HMC, intended to benefit HMC.  See Iqbal, 129 S. Ct. at 1949 (noting that a claim will survive a Rule 12(b)(6) motion when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

>C.   HMC Insufficiently Alleges Negligent
>     Misrepresentation.

In its Third Cause of Action, HMC alleges that BV "supplied false information" in connection with its report, and that BV "knew or should have known that others would justifiably and actually rely upon the false information."  Compl. ¶¶ 35, 36. BV argues that, as any alleged reliance by HMC on the report or its contents is unjustified, the court should dismiss HMC's negligent misrepresentation claim.  The court concludes that HMC has not pled facts sufficient to survive BV's motion to dismiss with respect to this claim.

Hawaii courts have adopted the standards for negligent misrepresentation set out in section 552 of Restatement (Second) of Torts.  Chun v. Park, 51 Hawai`i 462, 468, 462 P.2d 905, 909 (1969).  Negligent misrepresentation requires that:

14

> (1) false information be supplied as a result
> of the failure to exercise reasonable care or
> competence in communicating the information;
> (2) the person for whose benefit the
> information is supplied suffered the loss;
> and (3) the recipient relies upon the
> misrepresentation.

Blair, 95 Hawai`i at 269, 21 P.3d at 474 (citing Kohala Agric. v. Deloitte & Touche, 86 Hawai`i 301, 323, 949 P.2d 141, 163 (1997); Restatement (Second) of Torts § 552 (1977)).

HMC has sufficiently pled only some of the elements of negligent misrepresentation.  To satisfy the first element, HMC must allege that false information was supplied as a result of BV's failure to exercise reasonable care or competence in communicating the information.  Blair, 95 Hawai`i at 269, 21 P.3d at 474.  HMC alleges that BV supplied false information as a result of its failure to exercise reasonable diligence in investigating the property.  Compl. ¶ 34.  Thus, the first element is sufficiently pled.

The second element, however, is not sufficiently pled. To satisfy the second element, HMC must allege that HMC was the person for whose benefit the information was supplied, and that HMC suffered the loss.  See Blair, 95 Hawai`i at 269, 21 P.3d at 474.

HMC maintains only that BV knew that its environmental assessment was to be used in the land transaction between HMC and Irongate, and that it was influencing the transaction.  Compl.

15

¶¶ 36, 43.  While HMC alleges that the sale of property to Irongate would benefit HMC, HMC does not allege that the report prepared by BV, or information supplied in the report, was intended to benefit HMC.  Specifically, in paragraph 43 of the Complaint, HMC alleges that BV "knew or should have known that Irongate and HMC would rely on [the report] in order to conclude their transaction and that such transaction could confer significant economic benefit on HMC."  Similarly, in paragraph 45 of the Complaint, HMC alleges that BV "intended that Irongate and HMC should rely on the ESA . . . to mitigate clean-up costs related to the property."  This court does not read these allegations as stating that HMC was the person for whose benefit BV supplied the information.  HMC's allegation that BV knew that its report would influence the transaction could easily apply to BV's knowledge that Irongate would be influenced to Irongate's benefit, and that HMC's purported reliance was in the form of accepting Irongate's reliance.  The allegations do not clearly suggest that BV knew that Irongate would transmit the report to HMC or that HMC was an intended beneficiary.

Third, HMC must allege that it relied on the misrepresentation.  Blair, 95 Hawai`i at 269, 21 P.3d at 474.  HMC alleges that Irongate relied on the inaccurate information in the report to reduce the purchase price of the land, and HMC subsequently suffered a pecuniary loss.  See Compl. ¶ 42

16

("Irongate and HMC relied on [BV] to provide an accurate and complete ESA"; ¶ 38 "Irongate actually relied on the ESA to devalue the subject property in its negotiations with HMC.").

BV also argues that HMC's reliance on the report was unjustified because its assessment was made only for Irongate and contained a limitation provision clarifying that no outside parties could rely on BV's representations.  However, in arguing that it satisfies the reliance element, HMC explained at the hearing that it is looking to Irongate's reliance as satisfying the third element.  Irongate's reliance is clearly alleged.  For purposes of this ruling, this court need not determine whether reliance by HMC is required or whether any reliance by HMC was justified.

> D.   HMC's Claim of Tortious Interference With Prospective Business Advantage Survives the Motion to Dismiss.

In the Fourth Cause of Action, HMC asserts a claim for tortious interference with prospective business advantage.  HMC alleges that BV was to perform an "ESA on HMC's property with the goal of protecting a legitimate business expectancy that the ESA would provide complete and accurate information in order for Irongate and HMC to complete the transaction the parties contemplated."  Compl. ¶ 42.  BV contends that HMC fails to satisfy the elements of this claim, and that it should therefore be dismissed.  BV argues that HMC fails to plead proximate

causation and "a purposeful intent to interfere" as required to satisfy the elements of this claim.  Def's Mem. Supp. Mot. to Dismiss 11.  The court disagrees, concluding that HMC sufficiently alleges the elements of tortious interference with prospective business advantage.

"The primary objective of the tort of interference with prospective business advantage or opportunity is the protection of legitimate and identifiable business expectancies."  Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai`i 224, 258, 982 P.2d 853, 887 (1999), superseded by statute on other grounds as recognized in Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, 113 Hawai`i 77, 148 P.3d 1179 (2006).  "Where the plaintiff's contractual relations are merely contemplated or potential, the public interest is best served by allowing any competitor the opportunity to divert those prospects to itself, so long as the means used are not themselves improper."  Laupahoehoe Transp. Co., 91 Hawai`i at 258, 982 P.2d at 887.  The elements of tortious interference are:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment

18

of the relationship, advantage, or
expectancy; and (5) actual damages.

Buscher v. Boning, 114 Hawai`i 202, 216, n.7 159 P.3d 814, 828
n.7 (2007) (citing Kahala Royal Corp. v. Goodsill Anderson Quinn
& Stifel, 113 Hawai`i 251, 267 n.18, 151 P.3d 732, 748 n.18
(2007)).

For the first element, there must be "a colorable
economic relationship between the plaintiff and a third party
with the potential to develop into a full contractual
relationship."  Haw. Med. Ass'n, 113 Hawai`i at 116, 148 P.3d at
1179.  There is no question that HMC has alleged a colorable
economic relationship with Irongate.  The two had entered into an
agreement for the sale of property.

The second element requires that the defendant have had
either "actual knowledge" of the expectancy or knowledge "of
facts which would lead a reasonable person to believe that such
interest exists."  Id. (citing Kutcher v. Zimmerman, 87 Hawai`i
394, 406 n.16, 957 P.2d 1076, 1088 n.16 (Ct. App. 1998)
(citations omitted)).  HMC has alleged, "[BV] knew or should have
known that a . . . prospective advantage existed between HMC and
Irongate."  Compl. ¶ 44.  HMC has sufficiently alleged BV's
knowledge of the business relationship, and prospective
transaction, between Irongate and HMC.

The third element, intent, "denotes purposefully
improper interference . . . and requires a state of mind or

19

motive more culpable than intent." Haw. Med. Ass'n, 113 Hawai`i at 116, 148 P.3d at 1218 (internal citations omitted). In other words, "[t]he plaintiff must prove that the defendant either pursued an improper objective of harming the plaintiff or used wrongful means that caused injury in fact. Asserting one's rights to maximize economic interests does not create an interference of ill will or improper purpose." Id. (internal quotations omitted). In Hawaii Medical Association, the plaintiff alleged that the defendant "maliciously, intentionally, and without justification or excuse, engaged in numerous unfair and deceptive acts and oppressive business practices." Id. at 117, 148 P.3d at 1219. The Hawaii Supreme Court found this assertion sufficient. Id.

HMC has alleged that BV exhibited a "purposeful intent to interfere with the Irongage/HMC relationship . . . in order to procure for itself further economic gain by intentionally and/or negligently representing the status of the property." Compl. ¶ 46. Although the allegations could be more specific regarding this element of the tortious interference claim, when construed in the light most favorable to HMC, they are sufficient to satisfy the third element. See Guddee v. Abudanza, Inc., No. 06-00664, 2007 WL 4354220 at *10 (D. Hawai`i, Dec. 12, 2007) (noting that the plaintiff's allegations that the defendants "fraudulently induced" the plaintiff was sufficient to satisfy

20

the intent element and to survive a Rule 12(b)(6) motion to
dismiss).

BV has argues that its report was not the proximate
cause of any reduction in the sale price because the report came
out after HMC and BV agreed to the reduced price.  BV points to
an ambiguity in the dates of the documents to support this
contention.  HMC responds that the contents of the report had
previously been made available to Irongate and influenced its
decision to negotiate a reduction in sales price.  Although this
assertion by HMC appears nowhere in the Complaint, BV does not
dispute it.  While cognizant of what is to be considered on a
Rule 12(b)(6) motion, this court, given the apparent lack of
dispute and HMC's right to amend the Complaint as of right,
declines to dismiss the Fourth Cause of Action on the grounds
advanced by BV with respect to the fourth element.

Finally, for the fifth element, the plaintiff must
allege actual damages.  HMC alleges that the reduction in sale
price constitutes actual damages.  The fifth element is
satisfied.

Given the circumstances before this court, the court
denies BV's motion to dismiss the claim for tortious interference
with prospective business advantage.

21

V.        CONCLUSION.

HMC fails to allege viable claims for professional negligence, breach of contract, and negligent misrepresentation. The motion to dismiss is granted with respect to the First, Second, and Third Causes of Action.  The motion is denied with respect to the Fourth Cause of Action, which asserts a claim based on tortious interference with prospective business advantage.

HMC asks for leave to amend its Complaint.  This request is superfluous, as HMC has a right to amend.  If future events cause HMC not to be allowed to amend as of right, HMC may file an appropriate motion with the Magistrate Judge.

IT IS SO ORDERED.


DATED: Honolulu, Hawaii, September 25, 2009.




                    /s/ Susan Oki Mollway
                    Susan Oki Mollway
                    Chief United States District Judge

Hawaii Motorsports Investment, Inc. v. Clayton, Civil No. 09-304 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS.