IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAII MOTORSPORTS INVESTMENT, INC., a Hawaii corporation, and its limited partner, HAWAII MOTORSPORTS CENTER LIMITED PARTNERS, | ) ) ) ) ) ) | CIV. NO. 09-304 SOM/BMK<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CLAYTON GROUP SERVICES, INC, formerly known as CLAYTON ENVIRONMENTAL ENGINEERING and CLAYTON ENVIRONMENTAL CONSULTANTS, INC., now known as BUREAU VERITAS NORTH AMERICA, INC., a Delaware corporation doing business in Hawaii; DOES 1-10, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

I.      INTRODUCTION.

The parties dispute whether a contracting party owed certain duties to a nonparty to the contract. Plaintiffs Hawaii Motorsports Investment, Inc., and Hawaii Motorsports Center Limited Partners (collectively, "HMC") complain that an environmental assessment that Defendant Bureau Veritas North America, Inc, prepared was inaccurate and erroneous. HMC brings claims sounding in tort and in contract, and BV moves for dismissal of three claims, asserting, among other things, that it prepared the environmental assessment pursuant to a contract with

Irongate Wilshire, LLC ("Irongate"), not with HMC. The court denies BV's motion to dismiss.

II.     FACTUAL BACKGROUND.

HMC allegedly leased land from the James Campbell Trust Estate. First Amend. Compl. ¶ 4. The Hawaii Department of Health's Office of Hazard Evaluation and Emergency Response had a designation for the leased property that reflected a spill of contaminated water and oil on part of the property roughly forty years ago. Id. ¶ 5. HMC says that the contamination has been removed. Id. ¶ 6.

HMC explains that, in May 2005, it entered into an agreement with Campbell Estate to buy the property from Campbell Estate. Id. ¶ 8. HMC says it agreed to purchase the property in fee simple for roughly thirteen million dollars. Id. The agreement was allegedly conditioned on HMC's obtaining of a Letter of Credit on or before October 28, 2005. Id. HMC says that "time was of the essence." Id.

On October 19, 2005, HMC allegedly entered into a "binding" Letter of Intent with Irongate. Id. ¶ 9. Under this agreement, Irongate was to issue a Letter of Credit for roughly thirteen million dollars to Campbell Estate, and, in return, to receive title to the property. Irongate was to pay an additional seven million dollars or so to HMC. Id. ¶ 10. The transaction

was to occur no later than July 1, 2006.  Ex. A, attached to Pl.'s First Amend. Compl.

HMC allegedly agreed to assist Irongate with its environmental investigation and due diligence process, which was to be finished by October 28, 2005, "or a later date if mutually agreed upon by the parties."  Id.  Part of this due diligence process included obtaining a Phase I environmental site assessment that, among other things, would allegedly be used by HMC and Irongate to secure financing.  First Amend. Compl. ¶ 11.

On or about October 18, 2005, Irongate hired BV to prepare this environmental assessment.  Id. ¶ 12.  HMC claims that BV and Irongate intended that HMC, as the lessee/seller[1] of the property, would directly benefit from the report.  Id. ¶ 13.  BV finished the assessment in ten days, and, by October 26, 2005, had sent Irongate a summary of its findings.  Id. ¶ 17.  BV allegedly concluded that there were environmental hazards on the property.  Id. ¶ 18.  HMC alleges that BV relied on inaccurate information to reach this conclusion, such as a 1995 report stating that the property contained grit with deadly chemicals, and a paint booth storing waste oil containers.  Id. ¶¶ 18, 20, 21, 22.  HMC says the grit and paint booth had actually been

---

[1] This order refers to HMC as the "seller" of the property. Although not the owner of the property, HMC appears to have sold its option to purchase the property to Irongate and thus may have had interests like those of a seller.

3

removed from the property before BV prepared its report.  Id.
Irongate allegedly gave HMC a copy of the summary.  Id. ¶ 26.

After receiving BV's summary, Irongate allegedly informed HMC that it was adjusting the terms of the "binding" Letter of Intent in light of the environmental hazards.  Id. ¶¶ 24, 26.  Irongate offered HMC five hundred thousand dollars to form a joint venture with Irongate that would acquire and develop the property.  Id. ¶ 25.  Two days later, on October 28, 2005, HMC agreed to Irongate's new terms, and the parties formed a joint venture, HMC Irongate Hawaii Raceway Investors, LLC.  Id. ¶ 29.  HMC allegedly agreed to Irongate's new terms under financial pressure to finalize its deal with Campbell Estate.  Id. ¶ 28.

BV gave Irongate its final report roughly a week after releasing its summary.  BV's final report allegedly contained the same inaccuracies as the summary.  Id. ¶ 30.  According to HMC, a Phase II environmental assessment would have been required had BV's report been accurate.  Id. ¶ 31.  BV offered to prepare a Phase II environmental assessment for about half a million dollars, but the HMC-Irongate joint venture declined the offer.  Id. ¶¶ 32-34.

Roughly five months later, in March 2006, the HMC-Irongate joint venture hired another company to provide a new

Phase I environmental report.  Id. ¶ 35.  The new company allegedly discovered that BV's report was inaccurate.  Id.

In June 2009, HMC filed two separate suits in Hawaii state court, one against BV and one against Irongate.  On July 2, 2009, BV removed its case to federal court and moved to dismiss HMC's Complaint.  This court dismissed three of HMC's four claims based on HMC's failure to state a claim.  Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., No. 09-304, 2009 WL 3109941, at *1 (D. Haw. Sept. 25, 2009).  HMC has filed a First Amended Complaint asserting five claims.  First, HMC claims that BV was professionally negligent in providing an inaccurate environmental assessment.  Second, HMC says that BV breached its contract with Irongate.  Third, HMC argues that BV negligently misrepresented the status of the property to Irongate and HMC.  Fourth, HMC contends that BV tortiously interfered with HMC's prospective business advantage with Irongate.  Fifth, HMC asserts that BV slandered the title of HMC's interest in the property.  BV moves to dismiss the first three claims.

III.    LEGAL STANDARD.

Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc.,

5

110 F.3d 44, 46 (9th Cir. 1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police</u>

Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

IV.     ANALYSIS.

BV argues that HMC has not sufficiently pled professional negligence, breach of contract, or negligent misrepresentation. This court concludes that HMC has sufficiently pled such claims. Each is addressed in turn.

    A.  HMC Has Sufficiently Pled Professional Negligence.

HMC claims that BV was professionally negligent in preparing an inaccurate environmental assessment. HMC asserts that BV owed HMC a duty of care because of BV's status as a professional consultant. HMC further asserts that BV beached its duty by not complying with professional standards, such as the American Society for Testing and Materials' Phase I professional standards. First Amend. Compl. ¶¶ 43-48. BV responds that it was hired by Irongate, not HMC, and therefore owed no duty to HMC. BV also contends that the economic loss rule prevents HMC from asserting this tort claim. HMC has sufficiently pled, although has by no means proven, professional negligence.

    1.  HMC's Allegations, If Proven, Are Sufficient To Give Rise To A Duty On BV's Part to HMC.

A negligence claim requires a duty owed by a defendant to a plaintiff. See Bidar v. Amfac, Inc., 66 Haw. 547, 551, 669 P.2d 154, 158 (1983) (noting that "it is fundamental that a

negligence action lies only where there is a duty owed by the defendant to the plaintiff"). Whether a particular relationship gives rise to a duty is entirely a question of law. Id. at 552, 669 P.2d at 158.

Although a professional may be liable to a claimant not a party to the contract, that claimant must allege the existence of a relationship with the professional that gives rise to the existence of a duty of care. See Blair v. Ing, 95 Haw. 247, 259, 21 P.3d 452, 464 (2001) (holding that "where the relationship between an attorney and a non-client is such that we would recognize a duty of care, the non-client may proceed under either negligence or contract theories of recovery").

In Blair, the court held that trust beneficiaries alleged facts that, if proven, would be sufficient to show that an attorney who drafted trust documents owed a professional duty to the beneficiaries. 95 Haw. at 263, 21 P.3d at 468. The beneficiaries alleged enough to plead that (1) the primary purpose of creating the specific trust was to affect the beneficiaries; (2) in drafting the trust documents, the attorney could foresee that the intended beneficiaries would have a diminished inheritance if the trust documents were drafted incorrectly; (3) but for the defendant's alleged negligence in drafting, the intended beneficiaries would have received a greater inheritance; and (4) the policy of preventing future harm

8

caused by negligent drafting would be impaired if the intended beneficiaries were unable to recover the loss resulting from the attorney's negligence. Id. at 251-52, 260, 21 P.3d at 457-58, 465. HMC alleges similar facts.

HMC alleges that the environmental assessment was intended to benefit and affect HMC. First Amend. Compl. ¶ 49 ("BV was hired to assist HMC and Irongate to complete the due diligence on the acquisition of the subject property. Irongate and BV intended that HMC benefit and rely upon the [report and summary]."). HMC says that the report was to be used by both HMC and Irongate to secure financing. Id. ¶ 11.

BV responds that the environmental assessment was not intended to help or benefit HMC. BV says that most sellers only agree to an assessment "because few buyers, if any, would consider such a transaction if the seller refuses." Def.'s Mot. Dismiss at 6. However, the rationales, considerations, and intentions of buyers in general are not matters before this court on this motion to dismiss. And while it may be that BV and HMC had an adversarial relationship in which BV never intended to benefit HMC, the record before this court does not establish that.

This court looks again to Chun v. Park, 51 Haw. 501, 462 P.2d 905 (1969), a case this court distinguished when addressing BV's previous motion to dismiss. Chun involved a real

9

property transaction in which the seller was required to provide a clean title report from a third party, a title company. 51 Haw. at 463-64, 462 P.2d at 906-07. The court held that the title company owed a duty to the buyer, despite the lack of any contract between the company and the buyer, because the very purpose of the title report was to inform the buyer and the seller that the seller had good and marketable title. Id. at 464-65, 462 P.2d at 907. The underlying contract between the buyer and the seller explained the "purpose" of the title report, stating that the sale and purchase of the property was to be "free and clear of encumbrances" and that "evidence of title is to be in the form of Certificate of Title issued by a licensed searcher of titles." Id. at 465 n.1, 465 P.2d at 907 n.1. HMC alleges analogous circumstances in its amended pleading.

Although the final contract between HMC and Irongate is not in this court's record, the Letter of Intent between HMC and Irongate states, "HMC agrees to assist Irongate with its due diligence process, which shall begin upon execution hereof and continue through October 28, 2005." Ex. A, attached to First Amend. Compl. The Letter of Intent does not explicitly condition the sale on the absence of environmental hazards, but it does suggest that HMC and Irongate were working towards the mutual goal of completing the due diligence process. HMC alleges that the due diligence process included obtaining an environmental

report that was designed to be used jointly by HMC and Irongate to transfer title and to secure financing. First Amend. Compl. ¶ 11. HMC argues that, because both HMC and Irongate were depending on securing financing that required a favorable environmental report, they were in a position similar to that of the buyer and the seller who were relying on the title report in Chun.

As this court recognized at an earlier hearing in this case, both the seller and the buyer in Chun hoped for a clear title report, while an environmental assessment like the one in issue here involves an evaluation that may be intended to assist only the buyer. It may be that BV will be able to develop the record to demonstrate this distinction. But on this motion to dismiss, the court looks only to the First Amended Complaint, which alleges that the report was intended to benefit both HMC and BV. First Amend. Compl. ¶ 13. The First Amended Complaint thus alleges that HMC and Irongate had a relationship akin to that of the buyer and the seller in Chun.

The court is not saying BV's position is meritless. It does indeed seem unusual that an environmental consultant hired by a buyer to create a product for a buyer's use in negotiations with a seller would simultaneously agree to assist the seller. But the court cannot say that the circumstance is so implausible that the court should disregard the possibility. On the present

11

motion, this court takes HMC's allegations as true, and HMC alleges that BV prepared the environmental summary and report for use by both Irongate and HMC, that BV was aware that the summary and report would be used by Irongate and HMC in negotiations over the value of the property, that BV intended HMC to benefit directly from its summary and report, and that the report would be used by both HMC and Irongate to obtain financing. First Amend. Compl. ¶¶ 11, 13, 14, 39, 49, 50. HMC also alleges that it was an intended beneficiary of the contract. Id. ¶ 66; See also Hawaii Motorsports, 2009 WL 3109941, at *3 ("If HMC is only an incidental beneficiary, BV owed it no duty as a consultant."). It is foreseeable that an intended beneficiary would be harmed if the report was inaccurate. See Blair, 96 Haw. at 260, 21 P.3d at 465. HMC also suggests that, but for BV's inaccuracies, the sale would have gone forward as planned and HMC would not have been harmed. First Amend. Compl. ¶ 54. Construing the allegations with utmost liberality, the court concludes that HMC sufficiently alleges that BV owed a duty to HMC.

The court is, of course, aware that it must be "reluctant to impose a new duty upon members of . . . society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society." Blair, 95 Haw. at 260, 21 P.3d at 465. In denying the present motion, the court is not imposing any new duty. This court is

ruling only that HMC has sufficiently alleged facts that, if proven, would establish a duty under preexisting state law.

The court now turns to BV's argument that the economic loss rule bars HMC's claim.

> 2. HMC's Professional Negligence Claim, If Proven As Alleged, Is Not Barred By The Economic Loss Rule.

The economic loss rule, when it applies, precludes a plaintiff from recovering for purely economic losses in tort. City Exp., Inc., v. Express Partners, 87 Haw. 466, 469, 959 P.2d 836, 839 (1998). Broadly speaking, the economic loss rule is designed to maintain a distinction between damage remedies for breach of contract and for tort. Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc., 115 Haw. 232, 291, 167 P.3d 225, 284 (2007). This court's previous order analyzed the application of this rule. Hawaii Motorsports, 2009 WL 3109941, at *4-5. In sum, when a plaintiff alleges that a defendant with whom the plaintiff has no contract negligently performed its contractual obligations, the defendant is not liable in tort. Venture 15, 115 Haw. at 295, 167 P.3d at 288 (concluding that "the AOAO's negligence claims *based on violations of contract specifications* are barred by the economic loss rule").

HMC's original Complaint only alleged that BV breached its obligations and duties *arising under* its contract with Irongate. See generally Compl. ¶ 26 (BV "owed a duty to HMC . . . to perform its contractual obligations"). Thus, this court

13

concluded that <u>Venture 15</u> directly governed HMC's professional negligence claim, and HMC's professional negligence claim failed. HMC's First Amended Complaint contains allegations that cure the original Complaint's deficiencies in this regard.

In the First Amended Complaint, HMC alleges not only that BV breached its contractual obligations, First Amend. Compl. ¶ 51, but also that BV breached professional obligations and duties not arising from the contract itself, but from the relationship between HMC and BV.  First Amend. Compl. ¶¶ 13, 14, 39, 49, 50, 66.

The economic loss rule does not preclude a professional negligence claim arising from the breach of a duty arising from a professional relationship, not from a contract.  Having sufficiently alleged such a relationship and breach of duty, HMC may proceed with its negligence claim.

    B.   <u>HMC Has Sufficiently Pled Breach of Contract.</u>

In its second claim, HMC alleges that BV "breached its contract to provide a clear and accurate evaluation of HMC's property."  First Amend. Compl. ¶ 61.  HMC bases its breach of contract claim on the theory that "HMC was an intended beneficiary of the ESA and the Executive Summary."  <u>Id.</u> ¶ 66.

BV responds that the Letter of Intent between Irongate and HMC clearly establishes that Irongate and BV did not intend for HMC to benefit from BV's report and summary.  However, the

14

Letter of Intent contains no language limiting the benefit of the due diligence process or the environmental report exclusively to Irongate. Whether HMC was an intended beneficiary of the contract between BV and Irongate turns on whether those parties intended, in their contractual language or otherwise, that BV's services would benefit HMC. The court does not have before it the Irongate-BV contract. HMC's allegations on this point suffice.

        C.    HMC Has Sufficiently Alleged Negligent Misrepresentation.

HMC alleges that BV "supplied false information" in connection with its report, and that BV "knew or should have known that HMC, as seller of the subject property would justifiably and actually rely upon the [report and summary]." First Amend. Compl. ¶ 67. BV argues that any reliance is unreasonable. Def.'s Mot. Dismiss at 6-8.

Negligent misrepresentation requires that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." Blair, 95 Haw. at 269, 21 P.3d at 474 (internal citations omitted).

HMC has sufficiently pled the elements of negligent misrepresentation. To satisfy the first element, HMC must allege

15

that false information was supplied as a result of BV's failure to exercise reasonable care or competence in communicating the information. See Blair, 95 Haw. at 269, 21 P.3d at 474. HMC alleges that BV supplied false information as a result of its failure to exercise reasonable diligence in investigating the property. First Amend. Compl. ¶ 65.

To satisfy the second element, HMC must allege that HMC was the person for whose benefit the information was supplied, and that HMC suffered a loss. See Blair, 95 Haw. at 269, 21 P.3d at 474. HMC alleges that the report and summary were intended to benefit HMC. First Amend. Compl. ¶¶ 65-71. Specifically, in paragraph 66 of the Complaint, HMC alleges that BV "intended that HMC benefit and rely upon the ESA and the Executive Summary."

To satisfy the third element, HMC must allege that it relied on the misrepresentation. See Blair, 95 Haw. at 269, 21 P.3d at 474. HMC alleges that both HMC and Irongate relied on the inaccurate information in the report, agreeing as a result to a reduced purchase price. First Amend Compl. ¶ 71.

BV argues that HMC's reliance on the report was unreasonable because BV's assessment was intended to be relied on only by Irongate and contained an express limitation stating that no outside party could rely on BV's representations. Again, the court does not have that contract. Even if the contract so stated, it is not at all clear from the present record that HMC

16

even knew of that limitation or otherwise had reason to know it could not rely on the environmental assessment. HMC's allegations suffice given the record in this case.

IV.     CONCLUSION.

HMC sufficiently alleges claims for professional negligence, breach of contract, and negligent misrepresentation. The court denies BV's motion to dismiss those claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 5, 2010.



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Hawaii Motorsports Investment, Inc. v. Clayton, Civil No. 09-304 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION TO DISMISS.