IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII MOTORSPORTS INVESTMENT, INC., a Hawaii corporation, and its limited partner, HAWAII MOTORSPORTS CENTER LIMITED PARTNERS, <br><br> Plaintiffs, <br><br> vs. <br><br> CLAYTON GROUP SERVICES, INC., formerly known as CLAYTON ENVIRONMENTAL ENGINEERING and CLAYTON ENVIRONMENTAL CONSULTANTS, INC., now known as BUREAU VERITAS NORTH AMERICA, INC., a Delaware corporation doing business in Hawaii; DOES 1-10, <br><br> Defendant. | Civ. No. 09-00304 SOM-BMK <br><br> FINDINGS AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES BE GRANTED IN PART AND DENIED IN PART |

FINDINGS AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES BE GRANTED IN PART AND DENIED IN PART

Before the Court is Defendant Bureau Veritas North America, Inc.'s ("Defendant") Motion for Award of Attorneys' Fees. (Doc. # 181.) Pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"), the Court elects to decide this matter

without a hearing.  After careful consideration of the motion, the supporting and

opposing memoranda, and the attached documentation, the Court FINDS and

RECOMMENDS that Defendant's motion be GRANTED IN PART and DENIED

IN PART.  Specifically, the Court RECOMMENDS that Defendant be awarded

$137,908.65 in attorneys' fees.

<u>BACKGROUND</u>

This case concerns a complex real property transaction involving land

owned by Campbell Estate and leased to Plaintiff Hawaii Motorsports Center

Limited Partners ("HMC"), which sought to purchase the fee simple interest in the

property, then sell it to Irongate Wilshire, LLC ("Irongate").  (Doc. # 178 at 1.)

Irongate retained Defendant to prepare a Phase I environmental assessment of the

property.  (<u>Id.</u> at 1, 4-5.)  Shortly after starting its assessment, Defendant informed

Irongate that the property had environmental problems and that it would be costly

to fix the environmental problems.  (<u>Id.</u> at 5.)

On November 4, 2005, Defendant emailed a copy of its Phase I

environmental report to Irongate.  (<u>Id.</u> at 8.)  According to the environmental

report, the property had many environmental problems.  (<u>Id.</u>)  On

November 16, 2005, Defendant emailed a proposal for a Phase II environmental

assessment to "HMC Irongate Hawaii Raceway Investors LLC c/o Mr. Joshua

2

Crane, Member." (Id.)  HMC Irongate Hawaii Raceway Investors, LLC was a

joint venture created to purchase the property.  (Id. at 6-7.)  In connection with this

case, HMC had an environmental engineer prepare a report about Defendant's

environmental report.  (Id. at 9.)  The environmental engineer opined that the

majority of Defendant's recommendations were inaccurate.  (Id.)

On June 3, 2009, HMC and its general partner, Plaintiff Hawaii

Motorsports Investment, Inc. (collectively "Plaintiffs") filed the instant action

against Defendant in the Circuit Court of the First Circuit, State of Hawaii ("state

court"), seeking damages relating to the sale of HMC's interest in the property to

Irongate.  (Notice of Removal Ex. A.)  It was Plaintiffs' contention that Defendant

harmed them by preparing an inaccurate environmental report.  (See Doc. # 178 at

1-2.)

Defendant removed the action from state court to this Court on the

basis of diversity jurisdiction, then moved to dismiss Plaintiffs' complaint.

(Docs. ## 1, 4.)  On September 25, 2009, Chief District Judge Susan Oki Mollway

dismissed three of Plaintiffs' four claims and granted Plaintiffs leave to amend

their complaint.  (Doc. # 32.)  Plaintiffs amended their complaint on

October 28, 2009.  (Doc. # 39.)  In their amended complaint, Plaintiffs alleged that

Defendant was professionally negligent (Count I), breached its contract with

Irongate (Count II), made negligent misrepresentations (Count III), tortiously

interfered with Plaintiffs' prospective business advantage (Count IV), and

slandered the title and quality of the property (Count V).  (Id.)

On April 15, 2010, Defendant moved for summary judgment as to

Plaintiffs' breach of contract claim.  (Doc. # 95.)  Plaintiffs brought that claim on

the theory that HMC was an intended beneficiary of Defendant's contract with

Irongate.  (See Doc. # 141 at 9.)  Plaintiffs asserted that had Defendant not

breached its contract with Irongate, HMC would have been paid an additional

$7,100,000 by Irongate.  (Am. Compl. ¶ 60.)  Defendant countered that it prepared

the environmental report only for Irongate.  (See id. at 11.)  Defendant moved for

summary judgment as to Plaintiffs' remaining claims on May 31, 2010.

(Docs. ## 115, 117, 119.)

On June 29, 2010, Judge Mollway granted Defendant summary

judgment on Plaintiffs' breach of contract claim.  (Doc. # 141.)  Judge Mollway

found no evidence that HMC was an intended beneficiary of the contract between

Defendant and Irongate.  (Id. at 11.)  On August 27, 2010, Judge Mollway granted

Defendant summary judgment on Plaintiffs' remaining claims.  (Doc. # 178.)

Final judgment was entered in favor of Defendant pursuant to the summary

judgment orders on August 27, 2010.  (Doc. # 179.)  Defendant now moves for an

award of attorneys' fees against Plaintiffs.  (Doc. # 181.)

DISCUSSION

I.      Entitlement to Attorneys' Fees

A federal court sitting in diversity must apply state law in determining whether a party is entitled to an award of attorneys' fees.  Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1236 (9th Cir. 2001). Under Hawaii law, "[o]rdinarily, attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement."  Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Haw. 286, 305, 141 P.3d 459, 478 (2006) (citation and quotations omitted).

In this case, Defendant seeks an award of attorneys' fees against Plaintiffs pursuant to Hawaii Revised Statutes ("HRS") § 607-14.  (Mot. at 2.) This section provides, in pertinent part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee.  The court shall then tax attorneys' fees, which the court determines to be

5

> reasonable, to be paid by the losing party; provided that this
> amount shall not exceed twenty-five per cent of the judgment.

Haw. Rev. Stat. § 607-14.  In determining whether a claim is "in the nature of

assumpsit," the Hawaii Supreme Court stated, "Assumpsit is a common law form

of action which allows for the recovery of damages for non-performance of a

contract, either express or implied, written or verbal, as well as quasi contractual

obligations."  Porter v. Hu, 116 Haw. 42, 66, 169 P.3d 994, 1018 (Ct. App. 2007)

(quoting Blair v. Ing, 96 Haw. 327, 332, 31 P.3d 184, 189 (2001)) (quotations

omitted).

There is no dispute that Defendant is the prevailing party for purposes

of HRS § 607-14.  See MFD Partners v. Murphy, 9 Haw. App. 509, 514, 850 P.2d

713, 716 (1992) (noting that "in general, a party in whose favor judgment is

rendered by the district court is the prevailing party in that court") (citation and

quotations omitted).  There is also no dispute that Plaintiffs' claim for breach of

contract is in the nature of assumpsit and that Defendant is entitled to attorneys'

fees incurred in connection with the defense of this claim.  (See Mem. in Supp. of

Mot. at  6; Opp'n at 3.)  Plaintiffs, however, oppose Defendant's request for

attorneys' fees on the ground that it includes fees incurred in connection with the

defense of Plaintiffs' non-assumpsit claims.  (Opp'n at 3-4.)  Plaintiffs point to five

of Defendant's billing entries ("entries") as examples of time charged for work

6

performed in connection with the defense of such claims.  (Id. at 5-6; Opp'n Ex. A.)  Defendant concedes two of the entries, both of which were billed by Arakaki. (Reply at 5.)  Accordingly, the Court deducts 4.4 hours from Arakaki's total number of hours.

A court awarding attorneys' fees pursuant to HRS § 607-14 must base its award of attorneys' fees on an apportionment of the fees claimed between assumpsit and non-assumpsit claims, if practicable.  Porter, 116 Haw. at 66, 169 P.3d at 1018 (citing Blair, 96 Haw. at 332, 31 P.3d at 189).  In determining whether apportionment is practicable, the Hawaii Intermediate Court of Appeals ("ICA") stated:

> When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action.  However, the joinder of causes of action should not dilute the right to attorney fees.  Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not.  All expenses incurred on the common issues qualify for an award.  When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required.

Id. at 69, 169 P.3d at 1021 (citation and quotations omitted).  In Porter, the ICA noted that the plaintiffs' claims "were based on a common core of facts, occurred

7

roughly within the same two-month span of time, and were based on similar legal theories."  Id.  The ICA also noted that counsels' time appeared to have been "devoted largely to the litigation as a whole and not divisible into discrete slivers matching each claim advanced."  Id.  The ICA held that, under such circumstances, the circuit court did not abuse its discretion in awarding the plaintiffs fifty percent of the attorneys' fees requested for their HRS Chapter 481A claim, even though it was only one of several claims.  Id. at 47-48, 70, 169 P.3d at 999-1000, 1022.

In this case, the Court finds that some apportionment is necessary because Plaintiffs' non-assumpsit claims were a significant part of the case.  See, e.g., JJCO, Inc. v. Isuzu Motors Am., Inc., Civ. No. 08-00419 SOM-LEK, 2010 WL 3001924, at *8 (D. Haw. July 30, 2010) (finding that some apportionment was necessary because the non-assumpsit claims were a significant part of the case).  Specifically, the Court FINDS that an apportionment of thirty-five percent is appropriate to account for work related to the non-assumpsit claims. See JJCO, Inc. v. Isuzu Motors Am., Inc., Civ. No. 08-00419 SOM-LEK, 2010 WL 4272980, at *4 (D. Haw. Oct. 21, 2010) (adopting the magistrate judge's finding that an apportionment of fifteen percent is appropriate where three of the plaintiff's six claims were not in the nature of assumpsit); Moore & Moore, Etc. v. Stevens, Civ. No. 05-00215 SOM-LEK, 2008 WL 437030, at *3-4 (D. Haw.

8

Feb. 14, 2008) (finding that an apportionment of twenty-five percent is appropriate where two of the plaintiff's three claims were not in the nature of assumpsit). While the Court recognizes that four of Plaintiffs' five claims were not in the nature of assumpsit, the Court is directed to examine whether the claims are based on a common core of facts and how much of counsel's time was devoted to the litigation as a whole rather than to separate claims.  See JJCO, Inc., 2010 WL 4272980, at *4 (citing Porter, 169 P.3d at 1020, 116 Haw. at 68.)  Here, the Court finds that (1) Plaintiffs' breach of contract claim and non-assumpsit claims were predicated on a common core of facts, and (2) defense counsels' time was devoted largely to the litigation as a whole rather than to separate claims.  As to the latter, the Court notes that Defendant did not request attorneys' fees for work performed after summary judgment was granted on Plaintiffs' breach of contract claim. (Arakaki Aff. ¶¶ 10, 15, Sept. 10, 2010.)  The Court also notes that Defendant made some effort to exclude time for work performed only in connection with Plaintiffs' non-assumpsit claims.  (See, e.g., Mot. Ex. M at 4-6, 10, 12, 16 (no time charged for work performed in connection with Plaintiffs' fourth and fifth causes of action); Mot. Ex. N at 3-4, 7-8, 12-15, 17 (no time charged for work performed in connection with Plaintiffs' first, third, fourth, and fifth causes of action).)  The Court therefore RECOMMENDS an apportionment of thirty-five percent for work

related to Plaintiffs' non-assumpsit claims.  The Court now turns to the amount of the entitlement.

## II.    Calculation of Attorneys' Fees

Hawaii courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS Grp. L.P. v. Paiea Props., 110 Haw. 217, 222, 131 P.3d 500, 505 (2006).  Reasonable attorneys' fees are determined by multiplying the number of hours reasonably expended by a reasonable hourly rate.  See id. at 222-23, 131 P.3d at 505-06.  In addition, Hawaii courts may consider the following factors in determining whether an amount of attorneys' fees is reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

Chun v. Bd. of Trs. of Emps.' Ret. Sys. of Haw., 106 Haw. 416, 435, 106 P.3d 339,

358 (2005) (citation omitted).

In this case, Defendant requests $230,125.00 in attorneys' fees as set forth below:

|  | Hours | Rate | Total |
|---|---|---|---|
| Robert E. Badger | 543.95 | $250.00 | $135,987.50 |
| Scott C. Arakaki | 213.85[1] | $250.00 | $ 53,462.50 |
| Lawrence R. Cohen | 37.90 | $225.00 | $   8,527.50 |
| Allison M. Fujita | 25.70 | $225.00 | $   5,782.50 |
| Trina L. Yamada | 6.90 | $225.00 | $   1,552.50 |
| Michelle D. Acosta | 3.50 | $225.00 | $      787.50 |
| Shannon D. Mears | 20.75 | $100.00 | $   2,075.00 |
| Ashley N. Morgan | 219.50 | $100.00 | $  21,950.00 |
|  |  | TOTAL | $230,125.00[2] |

A.   Number of hours

The party seeking attorneys' fees bears the burden of proving that the

---

[1] This includes the above-mentioned 4.4 hour deduction to which Defendant does not object.

[2] In its motion, Defendant requested $231,329.00 in attorneys' fees.  (Mot. at 2.)  However, the Court reviewed Defendant's invoices and found numerous errors in Defendant's entries.  (See, e.g., Mot. Ex. D (using the hourly rate of $225 as opposed to $250 for Badger in entries dated 7/8/09, 7/14/09, 7/28/09, 7/30/09, 7/31/09); Mot. Ex. G (using the hourly rate of $250 as opposed to $225 for Fujita in entry dated 10/5/09); Mot. Ex. J (using the hourly rate of $250 as opposed to $225 for Fujita and Yamada in entries dated 1/15/10 and 1/19/10, respectively); Mot. Ex. K (using the hourly rate of $250 as opposed to $225 for Yamada in entry dated 1/21/10).)  The amount of attorneys' fees requested, before the 4.4 hour reduction in Arakaki's total number of hours, should have totaled $231,225.00.

11

number of hours expended was associated with the relief requested and reasonably necessary to achieve the results obtained.  <u>Tirona v. State Farm Mut. Auto. Ins. Co.</u>, 821 F. Supp. 632, 636 (D. Haw. 1993).  Here, Defendant attached to its motion documentation itemizing the number of hours expended.  (Mot. Exs. C-O.)  Defendant asserts that said hours were associated with Plaintiffs' breach of contract claim and reasonably necessary to litigate this claim.  (<u>See</u> Arakaki Aff. ¶¶ 10, 14, Sept. 10, 2010.)

Plaintiffs object to the number of hours requested on the grounds that Defendant's entries include: (1) time spent performing clerical or ministerial tasks, (2) block billing, (3) time spent on work performed pursuant to Defendant's insurance carrier's request, and (4) excessive redactions.  (Opp'n at 9-14.)  The Court addresses Plaintiffs' objections in turn.

1.    <u>Clerical or ministerial tasks</u>

Plaintiffs object to certain entries on the ground that they include time spent performing clerical or ministerial tasks.  (<u>Id.</u> at 9; Opp'n Ex. C.)  "Clerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate."  <u>Jeremiah B. v. Dep't of Educ.</u>, Civ. No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010).  Thus, this Court has held that the following tasks are clerical or ministerial and therefore not compensable:

12

reviewing Court-generated notices; scheduling dates and deadlines; calendering dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.  Robinson v. Plourde, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010); JJCO, Inc., 2010 WL 3001924, at *12; Nahas v. Cont'l Cas. Co., Civ. No. 03-00478 HG-LEK, 2010 WL 2176067, at *10 (D. Haw. May 26, 2010); Blake v. Nishimura, Civ. No. 08-00281 LEK, 2010 WL 1372420, at *8 (D. Haw. Mar. 31, 2010); Nicholas M. ex rel. Laura M. v. Dep't of Educ., Hawaii, Civ. No. 09-00162 HG-LEK, 2010 WL 234862, at *5 (D. Haw. Jan. 21, 2010).

The Court reviewed the entries to which Plaintiffs object and finds that many include time spent on clerical or ministerial tasks.[3]  The Court, however, finds it difficult to determine how much time was spent on such tasks because some entries are in a block-billing format.  "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific

---

[3] The Court did not review those entries for which no time was charged.

tasks." <u>JJCO, Inc.</u>, 2010 WL 3001924, at *12 (quoting <u>Robinson v. City of Edmond</u>, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)).  The Court therefore estimates the number of hours spent on clerical or ministerial tasks as follows:  1.5 hours scheduling, calendaring, and notifying others of dates and deadlines;[4] 4.1 hours lodging, filing, or serving documents;[5] 0.7 hours forwarding documents;[6] 0.7 hours handling copying and printing matters;[7] 3.0 hours identifying and organizing exhibits;[8] 0.4 hours communicating with state or federal court staff;[9] and 0.4 hours communicating with court reporters.[10]  Of the foregoing hours, 10.3 hours were billed by Badger and 0.5 hours were billed by Morgan.  The Court therefore RECOMMENDS that said hours be deducted from Badger's and Morgan's total number of hours.

---

[4] See Defendant's entries dated 7/6/09, 9/24/09, 10/5/09, 10/7/09, 3/22/10. (Opp'n Ex. C.)

[5] See Defendant's entries dated 7/2/09, 7/13/09, 9/3/09, 9/15/09, 9/16/09, 9/21/09, 9/28/09, 10/21/09, 11/12/09, 11/23/09, 12/16/09, 1/26/10, 2/23/10, 3/3/10, 3/17/10, 3/22/10, 3/22/10, 3/22/10, 3/22/10, 4/6/10, 4/15/10, 4/28/10, 6/1/10, 6/8/10, and 6/14/10.  (<u>Id.</u>)

[6] See Defendant's entries dated 7/2/09, 9/28/09, 12/28/09, 3/4/10.  (<u>Id.</u>)

[7] See Defendant's entries dated 10/26/09, 10/28/09, 6/7/10.  (<u>Id.</u>)

[8] See Defendant's entries dated 1/19/10 and 6/14/10.  (<u>Id.</u>)

[9] See Defendant's entries dated 7/2/09 and 10/26/09.  (<u>Id.</u>)

[10] See Defendant's entries dated 12/28/09, 1/4/10, 4/14/10.  (<u>Id.</u>)

2.     Block billing

Plaintiffs object to certain entries on the ground that they are in a block billing format.  (Opp'n at 10-12; Opp'n Ex. D.)  The Court reviewed those entries and finds that many include time spent on multiple tasks, and some include time spent on clerical or ministerial tasks that were not included in Plaintiffs' prior objection.[11]  The Court identifies thirty-one entries by Badger (totaling 24.35 hours),[12] six entries by Cohen (totaling 13.4 hours),[13] one entry by Acosta (totaling 2.8 hours),[14] and three entries by Morgan (totaling 7.2 hours)[15] in which the use of block billing makes it difficult, if not impossible, for the Court to determine the number of hours expended on each task.  The Court has the authority to reduce hours that are billed in a block format.  Welch v. Metro. Life Ins. Co.,

---

[11] The Court did not review those entries for which no time was charged, or from which time was previously deducted.

[12] These entries are dated as follows:  6/22/09, 6/23/09, 6/23/09, 6/26/09, 7/7/09, 8/3/09, 9/14/09, 9/16/09, 10/5/09, 10/16/09, 10/27/09, 11/18/09, 12/10/09, 12/11/09, 12/15/09, 12/15/09, 12/28/09, 12/31/09, 1/7/10, 1/11/10, 1/11/10, 1/11/10, 1/18/10, 1/22/10, 1/26/10, 2/23/10, 3/11/10, 3/15/10, 3/16/10, 3/17/10, 4/1/10, 4/2/10. (Opp'n Ex. D.)

[13] These entries are dated as follows:  11/12/09, 4/7/10, 4/13/10, 4/15/10, 5/10/10, 5/11/10.  (Id.)

[14] This entry is dated 9/2/09.  (Id.)

[15] These entries are dated as follows:  7/28/09, 7/29/09, 4/1/10.  (Id.)

480 F.3d 942, 948 (9th Cir. 2007).  In this case, the Court RECOMMENDS an

across-the-board reduction of fifteen percent with respect to the foregoing entries.

See Robinson, 717 F. Supp. 2d at 1100.  This amounts to a reduction of 3.65 hours

for Badger, 2.01 hours for Cohen, 0.42 hours for Acosta, and 1.08 hours for

Morgan.

> 3.    Litigation plans and other reports

Plaintiffs object to time spent on work performed pursuant to

Defendant's insurance carrier's ("insurance carrier") request.  (Opp'n at 12-13;

Opp'n Ex. E.)  Such work includes, among other things, reviewing the insurance

carrier's general litigation management guidelines, drafting a litigation plan and

litigation budget, and drafting correspondence to auditors.  (See Opp'n Ex. E.)  As

stated above, the party seeking attorneys' fees bears the burden of proving that the

number of hours expended was reasonably necessary to achieve the results

obtained.  Tirona, 821 F. Supp. at 636.  Courts must guard against awarding

attorneys' fees which are excessive, and must assess the extent to which attorneys'

fees could have been avoided or were self-imposed.  Id. at 636-37 (citations

omitted).  In this case, the Court reviewed Defendant's entries and is unconvinced

that the aforementioned work was reasonably necessary to achieve the results

obtained.[16]  Accordingly, the Court RECOMMENDS that 18.1 and 9.7[17] hours be

deducted from Arakaki's and Badger's total number of hours, respectively.

>    4.    Excessive redactions

Plaintiffs object to certain redacted entries on the ground that the

descriptions provided do not adequately describe the services rendered.  (Opp'n at

13-14; Opp'n Ex. F.)  Defendant argues that the entries were redacted to protect

attorney-client privileged material.  (Reply at 11.)

The Local Rules provide:

> The party seeking an award of fees must describe adequately
> the services rendered, so that the reasonableness of the
> requested fees can be evaluated.  ***In describing such services,
> counsel should be sensitive to matters giving rise to attorney-
> client privilege and attorney work product doctrine, but must
> nevertheless furnish an adequate non-privileged description
> of the services in question.***  If the time descriptions are
> incomplete, or if such descriptions fail to describe adequately
> the services rendered, the court may reduce the award
> accordingly.  For example, time entries for telephone
> conferences must include an identification of all participants
> and the reason for the call; entries for legal research must
> include an identification of the specific issue researched and, if
> possible, should identify the pleading or document for which

---

[16] The Court did not review those entries for which no time was charged, or from which time was previously deducted.

[17] The Court notes that the entry dated 2/4/10 in Exhibit E to Plaintiffs' opposition is incorrect.  The entry should have been for 0.1 hours and not 5.5 hours.  (See Mot. Ex. K.)

> the research was necessary; entries describing the preparation of
> pleadings and other papers must include an identification of the
> pleading or other document prepared and the activities
> associated with such preparation.

Local Rule LR54.3(d)2 (emphasis added).  After reviewing the entries to which

Plaintiffs object,[18] the Court FINDS that fifteen do not furnish an adequate non-

privileged description of the services in question.[19]  Specifically, all fifteen entries

are for telephone calls and they do not identify all of the participants or the reason

for the call.  See Local Rule LR54.3(d)2 (stating that "time entries for telephone

conferences must include an identification of all participants and the reason for the

call").  Because all fifteen entries were billed by Badger, the Court

RECOMMENDS that Badger's total number of hours be reduced by 4.3 hours.

> **B.**    Hourly rate

Because Hawaii courts calculate reasonable attorneys' fees based on a

method that is virtually identical to the traditional lodestar calculation, the Court

finds federal case law instructive in determining whether an hourly rate is

---

[18] The Court did not review those entries for which no time was charged.

[19] These entries are dated as follows:  7/1/09, 9/30/09, 11/19/09, 12/7/09, 12/15/09, 12/17/09, 12/22/09, 1/27/10, 2/23/10, 3/4/10, 3/4/10, 3/12/10, 3/16/10, 3/25/10, 4/5/10.  (Opp'n Ex. F.)  The Court notes that the descriptions provided in entries dated 2/5/10 and 2/10/10 in Exhibit F to Plaintiffs' opposition do not match the descriptions provided in Defendant's original entries.  (See Mot. Ex. K.)

reasonable.  Generally, a reasonable hourly rate is that prevailing in the community for similar work performed by attorneys of comparable experience, skill, and reputation.  See Webb v. Ada County, 285 F.3d 829, 840 (9th Cir. 2002); see also Tirona, 821 F. Supp. at 636.

Here, Defendant requests for Badger and Arakaki the hourly rate of $250.  (Arakaki Aff. ¶ 4, Sept. 10, 2010.)  Badger and Arakaki were licensed to practice law in the State of Hawaii since 1995 and 1994, respectively.  (Id. ¶¶ 1, 3.)  The Court FINDS Badger's and Arakaki's hourly rate to be reasonable and RECOMMENDS that they be awarded such rate.

Defendant requests for all other attorneys the hourly rate of $225.  (Id. ¶ 4.)  These attorneys were licensed to practice law in the State of Hawaii as follows:  Cohen since 1988, Fujita since 1997, Yamada since 1993, and Acosta since 2007.  (Id. ¶ 3; Arakaki Aff. ¶ 3, Oct. 22, 2010.)  The Court FINDS that as to Cohen, Fujita, and Yamada, the hourly rate of $225 is reasonable.  The Court thus RECOMMENDS that they be awarded such rate.  The Court finds that as to Acosta, the hourly rate of $225 is unreasonable as it is inconsistent with prior awards in this district.  See Nat'l Comm'n for the Certification of Crane Operators v. Ventula, Civ. No. 09-00104 SOM-LEK, 2010 WL 2179505, at *3-4 (D. Haw. Apr. 3, 2010) (finding that $130 is a reasonable hourly rate for an attorney with

three years of litigation experience).  The Court FINDS that, instead, an hourly rate of $130 is reasonable and RECOMMENDS that Acosta be awarded this rate.

Lastly, Defendant requests an hourly rate of $100 for Mears and Morgan.  (Arakaki Aff. ¶ 5, Sept. 10, 2010; Mot. Exs. C-E.)  At the time he worked on the case, Mears had one year of experience in law school.  (Arakaki Decl. ¶ 5, Oct. 22, 2010.)  The Court FINDS that the hourly rate of $100 is reasonable for Mears and RECOMMENDS that he be awarded this rate.  See Blake, 2010 WL 1372420, at *6 (finding that $100 is a reasonable hourly rate for a law student).  Morgan has a degree in paralegal studies and four years of paralegal experience.  (Arakaki Aff. ¶ 4, Oct. 22, 2010.)  The Court finds that the hourly rate of $100 is unreasonable for a paralegal with Morgan's experience.  See JJCO, Inc., 2010 WL 3001924, at *9, 11 (finding that $85 is a reasonable hourly rate for a paralegal with lengthy or specialized experience); Ko Olina Dev., LLC v. Centex Homes, Civ. No. 09-00272 DAE-LEK, 2010 WL 447451, at *2-3 (D. Haw. Feb. 9, 2010) (finding that $85 is a reasonable hourly rate for a paralegal with thirty years of experience).  The Court FINDS that, instead, an hourly rate of $75 is reasonable for Morgan and RECOMMENDS that she be awarded such rate.  See Ventula, 2010 WL 2179505, at *2, 4 (finding that $75 is a reasonable hourly rate for a paralegal with five years of experience).

C.      Total award

In accordance with the foregoing, the Court FINDS that Defendant is

entitled to attorneys' fees as set forth below:

|  | Hours | Rate | Total |
|---|---|---|---|
| Robert E. Badger | 516.00 | $250.00 | $129,000.00 |
| Scott C. Arakaki | 195.75 | $250.00 | $  48,937.50 |
| Lawrence R. Cohen | 35.89 | $225.00 | $    8,075.25 |
| Allison M. Fujita | 25.70 | $225.00 | $    5,782.50 |
| Trina L. Yamada | 6.90 | $225.00 | $    1,552.50 |
| Michelle D. Acosta | 3.08 | $130.00 | $       400.40 |
| Shannon D. Mears | 20.75 | $100.00 | $    2,075.00 |
| Ashley N. Morgan | 217.92 | $  75.00 | $  16,344.00 |
|  |  | Subtotal | $212,167.15 |
| 35% apportionment for the non-assumpsit claims |  |  | $  74,258.50 |
|  |  | TOTAL | $137,908.65 |

The Court finds that this amount is reasonable and that it is unnecessary to adjust

this amount based on the factors set forth above.  See Chun, 106 Haw. at 435,

106 P.3d at 358.

Finally, HRS § 607-14 limits awards of attorneys' fees to twenty-five

percent of the judgment.  The award "shall be assessed on the amount of the

judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and

***upon the amount sued for if the defendant obtains judgment***."  Haw. Rev. Stat.

§ 607-14 (emphasis added).  Plaintiffs do not dispute that the amount of attorneys'

fees sought, which is greater than the above amount, is within HRS § 607-14's twenty-five percent limitation.  Furthermore, Plaintiffs alleged, in their amended complaint, that HMC would have been paid an additional $7,100,000 had Defendant not breached its contract with Irongate.  (Am. Compl. ¶ 60.)  The Court finds that $137,908.65 does not exceed twenty-five percent of $7,100,000.[20] Accordingly, the Court RECOMMENDS that Defendant be awarded $137,908.65 in attorneys' fees.

CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS that Defendant's Motion for Award of Fees be GRANTED IN PART and DENIED IN PART.  The Court RECOMMENDS that Defendant be awarded $137,908.65 in attorneys' fees.

_____

[20] $0.25 \times \$7,100,000 = \$1,775,000.00$

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: December 1, 2010

Hawaii Motorsports Investment, Inc. v. Clayton Group Services, Inc.; Civ. No. 09-00304 SOM-BMK; FINDINGS AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES BE GRANTED IN PART AND DENIED IN PART.